### HARRIS v. UNITY INDUSTRIAL LIFE INS. CO.

### No. 5430.

Court of Appeal of Louisiana. Second Circuit.

April 1, 1937.

Rehearing Granted June 1, 1937.

On Rehearing Dec. 3, 1937.

Writ of Certiorari and Review Denied Jan. 10, 1938.

Rusca & Cunningham, of Natchitoches (Normann & Bethea, Normann & McMahon and Harold M. Rouchell, all of New Orleans on appeal only), for appellant.

Arthur C. Watson, of Natchitoches, for appellee.

HAMITER, Judge.

A policy of insurance in the principal amount of $300 was written by defendant on the life of one Harriet Harris. It was dated November 21, 1927, and Madie Harris, plaintiff herein, was the designated beneficiary.

Insured died on December 15, 1934. Subsequently, this suit was instituted with the view and purpose of recovering the above-named principal amount, together with certain alleged premium overpayments, and also interest and attorney's fees.

Defendant filed an exception of no cause or right of action and a plea of res judicata. These were overruled. It then answered.

The case was tried on its merits and there was judgment in plaintiff's favor for $300, together with 6 per cent. interest thereon from judicial demand until paid. The demands of plaintiff for attorney's fees and for the return of premiums were rejected. Defendant appealed from the judgment. Plaintiff neither appealed nor tendered answer to the appeal prosecuted by defendant.

The several pleadings filed by defendant and the brief of its counsel disclose that resistance of plaintiff's demands is founded on the following contentions:

(1) That under date of October 9, 1933, the insured accepted and received from defendant the sum of $72.96 in full settlement of its liability under the contract declared upon, and executed a written release therefor.

(2) That the age of the insured was misstated at the time of the issuance of the policy, and that such misstatement was made for the purpose of defrauding the insurer.

The alleged written release relied on, and above referred to, is found on the back of the policy contract and reads as follows:

"Natchitoches, La.
"Oct. 9, 1933.

"Received from the Unity Ind. Life Ins. Co. the sum of Seventy Two Dollars and Ninety Six Cents representing the refund of premium on this policy No. C4863 and I hereby release the said company from all liability that might arise under this policy in event of my death.

"Signed: Harriett Harrison
"Harriett Harris
"By Elma Jones
"Daughter of Insured
"Witness: W. H. King
"Witness: E. B. Joseph"

The name "Harriett Harrison" was evidently written first because the policy so described the insured; however, her correct name was Harriet Harris, as is revealed by an admission contained in the record. It is then to be noticed that the instrument was assertedly signed by one Elma Jones for and on behalf of her mother, the insured. But the evidence in the record does not show that the said

Elma Jones was authorized to sign for her mother or that she actually executed the release in question. In this connection, it is well to observe that insured's said daughter and also W. H. King, a witness to the release instrument, testified during the trial of the case as defense witnesses, but neither was questioned regarding the effecting of the alleged settlement and the execution of the release. We must therefore hold that this defense has not been substantiated by the record, and, accordingly, it cannot prevail.

Our attention is directed by defense counsel to the case of Coats v. Guaranty Bank & Trust Co. et al., 174 La. 503, 141 So. 41, 43 wherein the Supreme Court said: "Also, where a person's name is signed for him at his direction and in his presence by another, the signature becomes his own, and is sufficient to give the same validity to an instrument as though written by the person himself." Obviously, this doctrine is not applicable to the case at bar because of the absence of the proof to which we have above alluded.

The defense of misstatement of age must also fail. The record contains no proof whatsoever to sustain it.

The judgment is correct, and it is therefore affirmed.

### On Rehearing.

DREW, Judge.

This case is before us on rehearing. Our former opinion herein was rendered April 1, 1937.

The case involves the right of a beneficiary to recover on a life insurance policy.

The defense urged is that the insured, for a consideration, released the insurer and authorized the cancellation of the policy during her lifetime. The face value of the policy was $300, and contained the following disability clause:

"If, while this Policy is in full force and effect and while there is no default or premiums beyond the four weeks' grace period, the insured shall lose by severance both hands or both feet, or one hand and one foot, or lose permanently the sight of both eyes, total and permanent disability will be deemed to exist, and one-half of the amount of insurance then payable in the event of death shall be paid immediately upon receipt by the Company of due proof of such loss and surrender of this Policy. Thereafter no further premiums will be required and the Company will issue a free or paid-up Policy providing for payment at the death of the insured, of such benefit as would have been payable under the original Policy, less the amount of the claim already paid."

During the life of the insured, and while the policy was in full force and effect, she lost, permanently, the sight of both eyes. Under the above-quoted provision, she was then entitled to be paid $150, leaving $150 paid-up insurance. So far as the record discloses, the insured died without being paid anything under the policy, and the beneficiary instituted this suit for the face value of the policy.

The lower court awarded judgment as prayed for, and, in our former opinion, we affirmed the judgment.

The principal defense urged is a purported written release, which is written in ink on the back of the policy, and is as follows:

"Natchitoches La
"Oct 9, 1933

"Received from the Unity Ind Life Ins. Co the sum of Seventy Two Dollars and ninety Six Cents representing the refund of premium on this policy No. C 4863 and I hereby release the said Company from all liability that might arise under this policy in event of my death.
"[Signed]   Harriett Harrison
"Harriett Harris
"Elma Jones
"Daughter of Insured.
"Witness W. H. King
"Witness E. B. Joseph"

In our former opinion we held:

"The name 'Harriett Harrison' was evidently written first because the policy so described the insured; however, her correct name was Harriet Harris, as is revealed by an admission contained in the record. It is then to be noticed that the instrument was assertedly signed by one Elma Jones for and on behalf of her mother, the insured. But the evidence in the record does not show that the said Elma Jones was authorized to sign for her mother or that she actually executed the release in question. In this connection, it is well to observe that insured's said daughter and also W. H. King, a witness to the release instrument, testified during the trial of the case as defense witnesses, but neither was questioned regarding the effecting of the alleged settlement and the

execution of the release. We must therefore hold that this defense has not been substantiated by the record, and, accordingly, it cannot prevail.

"Our attention is directed by defense counsel to the case of Coats v. Guaranty Bank & Trust Co. et al., 174 La. 503, 141 So. 41, 43, wherein the Supreme Court said: 'Also, where a person's name is signed for him at his direction and in his presence by another, the signature becomes his own, and is sufficient to give the same validity to an instrument as though written by the person himself.' Obviously, this doctrine is not applicable to the case at bar because of the absence of the proof to which we have alluded."

■ Defendants seriously urge that the above finding was erroneous and contend that no proof was necessary, for the reason that the release was judicially admitted by plaintiff, and that, when plaintiff offered the policy in evidence without any reservation, she also offered the release written on the back of the policy and was thereafter relegated to the position of proving that same was secured fraudulently, which she did not attempt to do. That part of plaintiff's petition upon which defendants rely for its judicial admission reads as follows:

"Petitioner is informed that the said Insurance Company secured the signature of Harriett Harris to some form of release under the policy, probably for some nominal consideration. Petitioner specially avers, however, that if the Company did secure some sort of release from Harriett Harris, that it did so through fraud and because Harriett Harris was ignorant of her rights under the policy.

"That petitioner is informed that the Company secured this purported release during October, 1933, after Harriett Harris became blind and did not know what she was doing."

It is noted that there is no positive allegation as to a release. Plaintiff alleged she had been "informed" and further "if" the defendant did secure a release. It is not a positive allegation of fact and is not a judicial admission binding on plaintiff.

■ Plaintiff offered in evidence, without any reservation, the policy sued on, admitting that in doing so she offered the written release on the back of the policy, she certainly offered nothing more than was contained in the written release; and, if the release, as written and signed, was not in itself sufficient to bar recovery here, it can have no effect upon plaintiff's case.

■ We reaffirm our finding in our former opinion, that without proof of authority of deceased's daughter to sign the deceased's name to the release, that it has no binding effect.

■ However, if we should assume that the release was executed with authority, then the document itself is sufficient proof of fraud. The insured, at the time the release was executed, was absolutely entitled to be paid $150, and to be given a paid-up insurance policy for $150. There was no ground for compromise.

It is admitted that at the time she became totally blind her policy was in full force and effect. She was an ignorant negro woman, totally blind. The defendants contend they paid her $72 and canceled the policy. The transaction, on its face, reeks with fraud. There is, however, no testimony that the insured received any amount of money from defendants.

■ The "facility of payment" clause in the policy has no place here, for the reason defendants do not contend they paid to any one other than the insured any money on this policy, and rely strictly upon the written release.

We are of the opinion our former judgment was correct, and it is now reinstated and made the judgment of this court; costs to be paid by defendants.